T. Edward Cundick (10451) tec@princeyeates.com
**PRINCE, YEATES & GELDZAHLER**
A Professional Corporation
15 West South Temple, Suite 1700
Salt Lake City, UT 84101
Telephone: (801) 524-1000

*Attorneys for Todd and Robin Michaelis*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH
Central Division

| | |
|---|---|
| In re<br><br>THOMAS EDWARD POWERS,<br>xxx-xx-9726<br>and<br>TAMARA DENISE POWERS,<br>xxx-xx-8728<br>2036 N. Gilbert Rd., Ste. 2<br>Mesa, AZ 85203<br><br>Debtors. | Bankruptcy Case No. 16-28176<br>(Chapter 13)<br><br><br>Honorable Kevin R. Anderson |

**MOTION OF TODD AND ROBIN MICHAELIS
FOR ORDER COMFIRMING TERMINATION OF THE AUTOMATIC STAY,
OR ALTERNATIVELY TO ANNUL AUTOMATIC STAY**

Todd and Robin Michaelis (the **"Michaelises"**), by and through the undersigned counsel, hereby respectfully request that the Court enter an order, pursuant to 11 U.S.C. § 362(j), confirming that the automatic stay in the above-referenced case terminated on October 15, 2016, pursuant to 11 U.S.C. § 362(c)(3), and hence no actions taken by the

1

Michaelises to obtain a judgment against the debtors or obtain possession of property titled in the name of Sandra Powers violated the automatic stay. Alternatively, the Michaelises request that the Court annul the automatic stay in the above-referenced bankruptcy, to recognize the developments (including entry of judgment and efforts to effectuate that judgment) that have occurred in Arizona state court since the commencement of the above-referenced case, due to the apparently strategic decision by Thomas Powers (the **"Debtor"** or together with Tamara Powers, the **"Debtors"**) to withhold from the Arizona court or from the Michaelises any information regarding this bankruptcy case until it became clear that judgment would be entered against him in the Arizona proceeding. In support of this Motion, the Michaelises would show as follows:

1. The Debtors commenced chapter 13 bankruptcy case number 16-23684 in this court on April 29, 2016, and it continued until it was dismissed on August 9, 2016.[1]

2. The Debtors commenced the present chapter 13 bankruptcy case on September 15, 2016 (making it the second case pending within one year), and never filed a motion to continue the automatic stay.[2]

3. In 2014, the Michaelises commenced litigation against the Debtors and Thomas Powers' mother, Gertrude Sandra Powers (**"Sandra Powers"**) in the Superior Court for the State of Arizona in and for the County of Maricopa, Case No. CV2014-

---

[1] Case No. 16-23684, docket no. 1 (evidencing filing on 4/29/2016), and docket no. 21 (evidencing dismissal on 8/9/2016).
[2] Case No. 16-28176, docket no. 1.

093473 (the **"Arizona Proceeding"**).[3]

4. The central dispute in the Arizona Proceeding centered on ownership of a home located at 4222 E. Brown Rd. #13, in Mesa, Arizona (the **"Brown Road Home"**).[4]

5. The Debtor filed a counterclaim against the Michaelises in the Arizona Proceeding.[5]

6. The Michaelises, the Debtors, and Sandra Powers entered a partial settlement agreement in the Arizona Proceeding in April 2017, which provided for the appointment of a special master to review accounting records and make determinations about who held what interests in the Brown Road Home and who owed money to whom.[6]

7. In the partial settlement agreement, the Parties (including the Debtors) acknowledged that the Brown Road Home was an asset of the Brown Road Partnership created in 2012 between Tom Powers and Todd Michaelis, and Tom Powers reserved the right to argue that Todd withdrew from the Brown Road Partnership.[7]

8. On May 15, 2017, a stipulated order for reference to a special master was filed in the Arizona Proceeding, pursuant to which a special master was appointed (the

---

[3] Declaration of Todd Michaelis, attached hereto as Exhibit 1, at ¶ 2.
[4] *Id.* at ¶ 3.
[5] *Id.* at ¶ 4.
[6] *See* Exhibit 2, April 2017 Settlement Agreement.
[7] *Id.* at ¶ 10.

**"Special Master"**). The Special Master prepared a "Special Master Report" dated August 14, 2017, and a "Special Master's Replies to Various Objections from Counterparts" dated January 5, 2018.[8]

9. The Special Master found that Todd Michaelis and Thomas Powers participated in a joint venture (in the roofing business) and a partnership (the **"Brown Road Partnership,"** to purchase, fix, and flip the Brown Road Home). During the course of the partnership, the Brown Road Home was titled in the name of Sandra Powers (unbeknownst to the Michaelises), although the Special Master found that the Brown Road Home was a partnership asset.[9]

10. On several occasions within the four years prior to the petition date, Thomas Powers requested that the Michaelises make payments to entities he controlled, including Marathon Financial, Powers Agencies, L.L.C., PowCo, and POWCAM, L.L.C. Powers Agencies, L.L.C. and POWCAM, L.L.C. are still active entities according to the Arizona Corporation Commission.[10]

11. The Debtors lived at least part time in the Brown Road Home beginning in approximately June or July of 2013.[11]

---

[8] *See* Exhibits 3 and 4, Special Master Report dated August 14, 2017 and Special Master's Replies to Various Objections from Counterparts dated January 5, 2018.
[9] *See* Exhibit 3, Special Master Report dated August 14, 2017, at p. 14.
[10] *See* Exhibit 5, comprised of three checks remitted to Powers entities within four years of bankruptcy, and Exhibit 6, printed from the website of the Arizona Corporation Commission on 6/27/2018.
[11] Declaration of Todd Michaelis at ¶ 5.

12. The Debtors paid homeowners fees and mortgage payments on the Brown Road Home from entities they owned or controlled, before and presumably during the bankruptcy case, up until September 2017, when they ceased paying the mortgage on the Brown Road Property.[12]

13. The Debtors, with the help and cooperation of Sandra Powers, obtained a HELOC on the Brown Road Home in July 2014 from Comerica Bank. On information and belief, the proceeds of the HELOC benefited the Debtors exclusively, and not Sandra Powers. The Michaelises believe that the Debtors were indebted to either Sandra Powers or Comerica Bank on the petition date.[13]

14. The Debtors filed their chapter 13 petition on September 15, 2016.[14]

15. The Debtors filed original schedules on September 15, 2016.[15] The original schedules contain the following material omissions and deficiencies:

    a. The Debtors did not list on schedule A any interest in the Brown Road Home;

    b. The Debtors did not list any interests in incorporated or unincorporated businesses in response to question 19 on schedule B;

---

[12] *See* Exhibit 7, comprised of checks from Marathon Financial, Power Agencies, LLC, Power Financing Company LLC/Tom Powers, to Wells Fargo Mortgage, referencing the Brown Road Home. Note that the date on which the Debtors ceased making the Brown Road Home Mortgage payments coincides precisely with the issuance of the Special Master's August 2017 report.
[13] *See generally* Exhibit 8, Order Adopting Master's Report and Final Judgment, at ¶ E.2)-3).
[14] Docket no. 1.
[15] Docket no. 3.

   c. The Debtors did not list any claims against third parties in response to question 33 on schedule B;

   d. The Debtors did not schedule the Michaelises as creditors in the original schedules;

   e. The Debtors did not disclose their financial obligation arising out of the HELOC on the Brown Road Home as either a debt owed to Sandra Powers, or to Comerica Bank;

   f. The Debtors did disclose the Arizona Proceeding as pending litigation on their Statement of Financial Affairs, but captioned the case as "Thomas Edward Powers vs Todd Michaelis;"

   g. The Debtors did not disclose in their statement of financial affairs any property held for or controlled for somebody else, despite claiming in ongoing litigation to be the equitable owner of the Brown Road Home titled in the name of Sandra Powers; and

   h. The Debtors did not disclose in their statement of financial affairs any interest in business entities during the four years preceding their bankruptcy filing.

16. The Debtors only added the Michaelises as a "disputed" creditor by an amendment to their schedules filed May 14, 2018. They listed the claim in the amount "unknown," despite being aware at the time that the Special Master in the Arizona

Proceeding had already determined their liability to the Michaelises in an amount in excess of $150,000.00.[16]

17. In amended schedules filed May 14, 2018, the Debtors still did not list any legal or equitable interest in the Brown Road Home, even though they were simultaneously asserting in the Arizona Proceeding that they had a substantial equitable interest in that property.[17]

18. The Michaelises had no actual knowledge of the Debtors' bankruptcy case until April 25, 2018, (at which time both the original and updated special master reports had been submitted to the Arizona court, and it was clear to all parties that the Arizona Proceeding would be resolved largely in favor of the Michaelises). The Michaelises received actual notice of the bankruptcy case at that time via a letter to the Michaelises' Arizona state court counsel, from the Debtors' Utah bankruptcy counsel, Theron Morrison.[18]

19. At that time, the Michaelises and their attorney believed that the bankruptcy did not affect them because: (1) the Michaelises were not listed on the Debtors' schedules; (2) the Brown Road Home was titled in the name of Sandra Powers; (3) it was not identified in the bankruptcy schedules as an asset of the Debtors; and (4) the confirmed chapter 13 plan did not treat the Brown Road Home or the Michaelises'

---

[16] Docket no. 114. *See also* Exhibit 3, at pp. 4 and 16.
[17] *See* docket no. 115. *See also* Exhibit 9, a handwritten contract between Tom Powers and Todd Michaelis creating the Brown Road Partnership.
[18] Exhibit 1, Declaration of Todd Michaelis, at ¶ 6.

claim.[19]

20.     Between April 25 and May 31, 2018, the Debtors' state court attorney in the Arizona Proceeding conveyed multiple settlement offers to the Michaelises, and participated in a settlement conference with the Michaelises, which led the Michaelises to believe that the Powers were not intending to stay that proceeding in reliance on the automatic stay. There was never any indication that any such settlement agreement would need to be approved by the bankruptcy court.[20]

21.     On May 17, 2018, three days after the amended schedule was filed, and without having given any notice of the bankruptcy to the Arizona court, the Debtors appeared through their Arizona state court attorney at the final hearing on the Michaelises' "Motion for Confirmation and Adoption of Master's Original Report filed with the Court on August 15, 2017, and the Master's Supplemental Report filed with the Court on January 5, 2018." At that hearing, the Debtors' state court attorney informed the state court for the first time of the Debtors' bankruptcy case, and of the amended schedule that attempted to bring the Michaelises into the bankruptcy case which they then believed they were not involved with, due to the Debtors' actions in omitting them or their interests from the bankruptcy case.[21]

22.     The Arizona court entered a minute entry finding the Debtors "responsible

---

[19] *Id.* at ¶ 7.
[20] *Id.* at ¶ 8.
[21] *Id.* at ¶ 9.

for unnecessarily delaying th[e] case and continuing to do so at the present time." The minute entry also approved a written "Order Adopting Master's Report and Final Judgment…"[22]

23. Also on May 17, 2018, the Arizona Proceeding concluded with entry of a final judgment awarding Sandra Powers a judgment in the amount of $13,007.50 against Michaelis Construction, LLC, and the Michaelises a judgment against the Debtors and Sandra Powers in the amount of $226,132.53. The judgment also declared that the Brown Road Home was a partnership asset, and that Todd and Robin Michaelis had a 50% ownership interest in the Brown Road Home, and that the deed to the property should be amended to reflect such interest. Finally, the judgment provided a mechanism by which the Brown Road Home should be sold, and the proceeds of sale allocated among the parties, with or without the participation of the Debtors.[23]

24. On or about May 14, 2018, the Debtors filed a claim on behalf of the Michaelises in the amount of $1,000.00, despite knowing that the Special Master had already determined that the Michaelises had a claim in excess of $150,000.00 against the Debtors.[24] The Michaelises did not become aware of this claim until May 17, 2018.[25]

---

[22] Exhibit 10, a minute entry from the Arizona Proceeding.
[23] Exhibit 8, Order Adopting Master's Report and Final Judgment.
[24] *See* Claim No. 8-1, filed May 14, 2018.
[25] Exhibit 1, Declaration of Todd Michaelis at ¶ 10.

## LEGAL ARGUMENT

**I.    The Court should enter an order noting that the automatic stay in this case terminated on October 15, 2016, as to the debtors.**

Section 362(j) provides that "On request of a party in interest, the court shall issue an order under subsection (c) confirming that the automatic stay has been terminated." Section 362(c)(3) was added to the Bankruptcy Code as part of the 2005 BAP/CPA amendments to deprive serial filers of the protections of the automatic stay unless they proved (in a hearing concluded within 30 days of filing) that their most-recently filed case was in good faith.  In relevant part, it provides as follows:

> (3) if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, . . .
>
> (A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case[.]

11 U.S.C. § 362(c)(3). Subparts (B) and (C) of § 362(c)(3) then provide the mechanism through which a debtor can seek an extension of the stay, as well as the required standards to prevail on such a request. In the present case, the Debtors did not seek to extend the automatic stay, and therefore it terminated on the thirtieth day following the commencement of the case, October 15, 2016.[26] The Michaelises, therefore, respectfully

---

[26] The Debtors, through counsel, have threatened to file an adversary proceeding against the Michaelises, alleging that they violated the automatic stay throughout the Arizona Proceedings, and thereafter by seeking to physically secure the Brown Road Home pursuant to the final order entered by the Arizona court. They have also continued to strip the Brown Road Home of

10

request that the Court enter an order noting the termination of the automatic stay as to the Debtors, and confirming that nothing done by the Michaelises in obtaining judgment against the Debtors in the Arizona Proceeding, or seeking to enforce that judgment against the Brown Road Home (which was titled in the name of Sandra Powers) violated the automatic stay in this bankruptcy case.

## II. Alternatively, the Court should annul the stay to validate the actions of the Arizona State Court and the Michaelises.

Alternatively, the Michaelises request that the Court annul the automatic stay and validate all actions they have taken to obtain a judgment against the Debtors in Arizona, and to obtain and liquidate the interest in the Brown Road Home awarded in the Arizona Proceeding.

Whether to annul the stay to validate an act done in violation thereof is a matter reserved to the discretion of the bankruptcy court. *See Franklin Sav. Ass'n v. Office of Thrift Supervision*, 31 F.3d 1020, 1023 (10th Cir. 1994). In exercising such discretion, courts have developed a list of factors to assist them in their analysis. In *In re Schumann*, 546 B.R. 223 (Bankr. D.N.M. 2016), the court identified these factors as follows:

> 1) whether the creditor had actual or constructive knowledge of the debtor's bankruptcy filing when it acted in violation of the automatic stay;
>
> 2) whether the debtor filed the bankruptcy case in bad faith or otherwise acted in bad faith;

---

fixtures contained therein, in contravention of the Arizona court's order, alleging that the Arizona court's order is void because it was entered in violation of the automatic stay.

11

3) whether "grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation";

4) how quickly the creditor sought annulment of the automatic stay upon learning of the debtor's bankruptcy filing;

5) whether the creditor continued to violate the stay after learning of the debtor's bankruptcy filing;

6) whether the debtor remained "stealthily silent" in the face of the creditor's unknowing violation of the automatic stay; and

7) whether the creditor would be prejudiced if the stay were not annulled.

In the context of a motion to annul the stay, the creditor seeking annulment must first show the presence of circumstances warranting the relief sought (*i.e.*, that the factors identified above weigh in favor of such relief). If shown, the debtor then bears the ultimate burden of proving that the relief sought should be denied. *Id.* at 230. Here, the undisputed facts demonstrate circumstances warranting annulment of the stay.

***Whether the creditor had actual or constructive knowledge of the debtor's bankruptcy filing when it acted in violation of the automatic stay.***

For many months, from September 2016 until April 2018, the Michaelises were unaware of the pending bankruptcy case. On April 25, 2018, they became aware of the bankruptcy, but perhaps erroneously believed that the Debtors' decision to omit any material mention of the Arizona Proceeding, dispute, or claim made their situation essentially "outside the bankruptcy." The Debtors' state court attorney in the Arizona Proceeding conveyed settlement offers and participated in settlement conferences throughout the months of April and May, 2018. Only on or about May 17, 2018 did the

Michaelises and the state court become aware of the Debtors' efforts to bring the dispute into the bankruptcy arena. Thus, most of the relevant actions in the Arizona Proceeding were undertaken with no actual or constructive knowledge of the bankruptcy proceeding. All findings made by the Special Master were made before anybody in Arizona (besides the Debtors) had any knowledge of the bankruptcy proceeding.

***Whether the debtor filed the bankruptcy case in bad faith or otherwise acted in bad faith.***

The Debtors' complete lack of candor in their bankruptcy schedules evidences their bad faith. They filed the case without disclosing the claim being asserted in litigation by the Michaelises. They gave the Michaelises no timely notice of the bankruptcy proceeding. They failed to disclose any interest in the Brown Road Home, either in their original or amended schedules, despite the fact that at the time they filed their bankruptcy case, they were actively litigating in Arizona on a theory that they were the equitable owners of the property (even if they believed that Sandra was the legal owner of the property, they didn't disclose that relationship either). They failed to disclose the payments they or entities they controlled were making on the Brown Road Home mortgage, or to include them in their budget. They failed to disclose the existence of entities they owned or controlled during the four years preceding the bankruptcy case. The breadth of their omissions precludes any reasonable fact finder from believing that the omissions were the harmless result of inadvertence.

13

***Whether grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation.***

It is difficult to say whether relief would have been granted in September 2016, to allow the Michaelises to liquidate their state court claims in Arizona. The fact that real property located in Arizona was centrally at issue in the litigation is material evidence that there was cause for relief from stay to proceed in Arizona in 2016. The case to grant relief from stay would only have become more and more compelling as the Arizona court advanced deeper and deeper into the proceedings. If a motion had been brought immediately on April 25, 2018, it almost certainly would have been granted, considering the advanced state of the litigation, when the only remaining ministerial act was for the Arizona Court to adopt the findings of the Special Master, and determine the attorneys' fees accrued.

But whether that case would have been finally determined in Arizona or in Utah, it would have had to have been litigated once, somewhere. There is nothing equitable about setting aside all that work to liquidate the claims in the case, only to have to recreate the process at great expense in the bankruptcy case now. The opportunity to avoid this result always lay squarely with the Debtors, and they chose to remain stealthily silent.

***How quickly the creditor sought annulment of the automatic stay upon learning of the debtor's bankruptcy filing.***

The delay since the Michaelises became aware of the case has not been substantial. It has been 63 days since they first became aware of the case. In that time, they have had

to identify and retain Utah counsel, and determine a course of action. The delay has not been unreasonable.

***Whether the creditor continued to violate the stay after learning of the debtor's bankruptcy filing.***

If the Court denies the present motion, the Michaelises are prepared to ask the Arizona court to set aside the judgment as against the Debtors, and come to the Bankruptcy Court to request that it adopt the findings of the Special Master and enter judgment against the Debtors, allowing the Michaelises to proceed against the home owned by Sandra. Other than obtaining judgment against the Debtors, none of the actions undertaken by the Michaelises since April 25, 2018 constitute continuing stay violations in this case.[27]

***Whether the debtor remained "stealthily silent" in the face of the creditor's unknowing violation of the automatic stay.***

The Debtors remained "stealthily silent" in the Arizona Proceeding about their bankruptcy case for over nineteen months from the time they filed the bankruptcy case. Thomas Powers sat for interviews with the Special Master, assisted his Arizona counsel in

---

[27] On June 13, 2018, Sandra Powers filed a chapter 13 bankruptcy case, pending before Judge Marker (18-24377). The Debtors have asserted that the Michaelises "forcefully removed the Debtors from their primary residence by making a false representation to law enforcement in Arizona," apparently referring to events that occurred on June 15, 2018, at a time the Michaelises were unaware that Sandra Powers had filed her own bankruptcy petition. It is completely unclear from the record how the Debtors could assert that the Brown Road Home was their principal residence, when they've repeatedly identified other property as their principal residence in multiple filings in the bankruptcy case. *See, e.g.*, the Debtors' Original Petition, docket no. 1. Furthermore, the Debtors stated that they had vacated the Brown Road Home shortly before June 15, 2018, and the Michaelises actions in taking possession of the Brown Road Home could only be interpreted as an act against Sandra Powers, not the Debtors. The Michaelises intend to forthwith seek annulment of the automatic stay in Sandra Powers' case as well as by the present motion.

Document    Page 16 of 20

preparing various exhibit binders and motions, and otherwise sought a favorable result on their counterclaims, until it became apparent that the tide in the Arizona Proceeding was about to overcome them. Only then did they begin to raise the bankruptcy as a "trump card," seeking to invalidate all the work done by the Arizona court, the Special Master, and the Michaelises and their state court counsel. This is precisely the behavior disapproved of by the Tenth Circuit in *Job v. Calder*, 907 F.2d 953, 956-57 (10th Cir. 1990), when it stated:

> It would be inequitable to allow Calder to claim any protections of the automatic stay under section 362(a) to defeat the Jobs' state court judgment. The basic undisputed fact apparent from the record is that Calder actively litigated the state court action and did not provide notice of the pending chapter 13 proceeding until just before the state court was to enter a final judgment. Calder must bear some responsibility for his unreasonable delay in asserting his rights under section 362(a). Calder's only explanation, that he forgot, is not a legitimate excuse for his delay. To hold otherwise and permit the automatic stay provision to be used as a trump card played after an unfavorable result was reached in state court, would be inconsistent with the underlying purpose of the automatic stay…

***Whether the creditor would be prejudiced if the stay were not annulled.***

The Michaelises have expended substantial resources asserting their claims against the Debtors and the Broad Road Home since 2014. They have been denied the opportunity to participate in the Debtors' chapter 13 case. If the automatic stay is not annulled, the Debtors have stated that they intend to seek sanctions against the Michaelises for a willful violation of the automatic stay. The Michaelises face extreme prejudice if the stay is not annulled.

In summary, all seven of the above-listed factors are either neutral or support annulling the stay as to all actions taken by the Arizona court and the Michaelises in Arizona. The most that can be said against the Michaelises is that they should have come to the Bankruptcy Court on April 25, 2018, and requested relief from stay at that time. But given the extent to which the Debtors attempted to misrepresent the status of their Arizona dealings, including leading the Michaelises to believe that the Brown Road Home and the Michaelises claims were "outside the bankruptcy," whatever delay has passed is justifiable. Now, 63 days later, the Michaelises are before the Court, and request that the automatic stay be annulled as to all acts done to obtain judgment against the Debtors in Arizona, and obtain the benefits ordered therein by the Arizona court.

## **CONCLUSION**

For the reasons stated above, the Michaelises request that the Court enter an order confirming the termination of the automatic stay on October 15, 2016, or alternatively, annul the automatic stay and validate all actions they have taken to obtain a judgment against the Debtors in Arizona, and to obtain and liquidate the interest in the Brown Road Home awarded in the Arizona Proceeding. In the event the court annuls the automatic stay, the Michaelises request that the order annulling the stay be effective upon entry, rather than subject to the 14-day stay provided for in F.R.B.P. 4001(a)(3), for the cause

shown herein including the entirety of the Powers' deception and manipulation of the bankruptcy process.

Dated this 27th Day of June, 2018.

                                    PRINCE, YEATES & GELDZAHLER

                                    /s/ T. Edward Cundick
                                    T. Edward Cundick

                                    Attorneys for Todd and Robin Michaelis

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of June, 2018, I electronically filed the foregoing **MOTION OF TODD AND ROBIN MICHAELIS FOR ORDER COMFIRMING TERMINATION OF THE AUTOMATIC STAY, OR ALTERNATIVELY TO ANNUL AUTOMATIC STAY** with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to all parties whose names appear on the electronic mail notice list for this case, including the following:

- Jesse A.P. Baker    ecfutb@aldridgepite.com, jbaker@aldridgepite.com;JPB@ecf.inforuptcy.com
- Tom Cook    lundbergecfmail@lundbergfirm.com, ecfmaildistgroup@lundbergfirm.com
- Lon Jenkins tr    ecfmail@ch13ut.org, lneebling@ch13ut.org
- Mark S. Middlemas    LundbergECFmail@Lundbergfirm.com, ecfmaildistgroup@lundbergfirm.com
- Theron D. Morrison    topofutahlaw@gmail.com, morrisonlawecf@gmail.com;chapter7email@gmail.com;tmlawclerks@gmail.com;bkecf_morrison@bkexpress.info;morrisonssp@gmail.com
- Brian J. Porter    brian@hwmlawfirm.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov
- Theron D. x2Morrison    topofutahlaw@gmail.com, morrisonlawecf@gmail.com;chapter7email@gmail.com;tmlawclerks@gmail.com;bkecf_morrison@bkexpress.info
- Gale K. x3Francis    txbk13@utah.gov
- Theron D. x3Morrison    topofutahlaw@gmail.com, morrisonlawecf@gmail.com;chapter7email@gmail.com;tmlawclerks@gmail.com;bkecf_morrison@bkexpress.info

/s/ T. Edward Cundick

Table of Exhibits

Exhibit
1	Declaration of Todd Michaelis dated June 17, 2018
2	April 2017 Settlement Agreement
3	Special Master Report dated August 14, 2017
4	Special Master's Replies to Various Objections from Counterparts dated January 5, 2018
5	Checks to Powers entities
6	Powers entities printout from Arizona Corporation Commission
7	Mortgage checks on Brown Road Home from Powers entities
8	Order Adopting Master's Report and Final Judgment dated May 17, 2018
9	Handwritten contract dated August 28, 2012
10	Minute entry from May 17, 2018

g:\tec\michaelis\tepowers bankruptcy\m to annul stay_comfort order.docx